**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **Robert Grant,** )            | **CASE NO. 1:16 CV 2475** |
| )                              |                           |
| **Plaintiff,** )               | **JUDGE PATRICIA A. GAUGHAN** |
| )                              |                           |
| **Vs.** )                      |                           |
| )                              |                           |
| **JPMorgan Chase Bank, N.A.,** ) | **Memorandum of Opinion and Order** |
| )                              |                           |
| **Defendant.** )               |                           |

## INTRODUCTION

This matter is before the Court upon Plaintiff's Motion to Enforce Settlement; Motion for Fees; and Motion for Hearing (Doc. 20, 21)[1]. For the reasons that follow, the Court GRANTS Plaintiff's motion to enforce settlement and motion for fees, and DENIES his motion for hearing.

## BACKGROUND

Plaintiff Robert Grant, a former employee of Defendant JPMorgan Chase Bank, N.A., filed this action against Defendant on October 7, 2016, alleging disability discrimination claims

---

[1] Plaintiff filed a Supplemental Motion to Enforce Settlement; Motion for Fees; and Motion for Hearing (Doc. 21). Plaintiff's initial motion and supplemental motion are addressed collectively.

1

under federal and state law. On August 10, 2017, the parties negotiated a settlement agreement at a court-ordered settlement conference. The parties reached agreement on the amount of payment and other material terms. One of the negotiated terms was that Plaintiff agreed not to seek re-employment by Defendant, JPMorgan Chase Bank, N.A. The parties, however, agreed that Plaintiff's "employment is protected if his employer merged with JPMC [Defendant] or its related entities." (Def.'s Resp. at 3).

Defendant requested that it have until August 31, 2017, to confirm its acceptance of the settlement. On August 31, 2017, Defense counsel notified Plaintiff's counsel and the Court that Defendant had accepted the settlement. Specifically, Defense counsel wrote:

> Judge Gaughan:
>
> I am pleased to report that Defendant has accepted the settlement we tentatively reached on August 10, 2017.

Although counsel's email did not state that Defendant's acceptance was conditioned on additional terms that had not been discussed at the settlement conference, Defendant thereafter demanded that Plaintiff agree to several additional terms before it would execute the agreement. One of those terms was that Plaintiff also agree never to seek re-employment with Defendant's parent company, JPMorgan Chase and Co. or any of its subsidiaries worldwide.[2]

On September 28, 2017, the Court held a phone call with counsel for both parties to discuss the settlement agreement, going item-by-item through a draft of the agreement.[3] During

---

[2] The other issues have been resolved by the parties.

[3] Prior to the conference, the Court informed counsel that parties should be available if needed. Defense counsel never informed the Court during the call that she did not have settlement authority.

2

the call, Defendant's counsel agreed to remove the reference to "subsidiaries" in the re-hire clause. Plaintiff, in turn, agreed never to apply for employment with Defendant, its parent corporation, or one additional entity, J.P. Morgan Securities, LLC. After the call, the Court noted on the docket, "the Court anticipates a dismissal entry on or before 10/30/17."

Despite counsel's assurance that "subsidiaries" would be removed from the re-hire clause, Defendant refuses to execute the agreement unless Plaintiff agrees never to seek re-employment from Defendant's subsidiaries and its related entities. Plaintiff now moves to seek enforcement of the agreement that the parties reached on August 31, 2017. Defendant opposes Plaintiff's motion.

**ANALYSIS**

"Courts retain the inherent power to enforce agreements entered into in settlement of litigation pending before them." *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (citations omitted). This is true even if the agreement has not been reduced to writing. *Id.* "Because settlement agreements are a type of contract, the formation and enforceability of a purported settlement agreement are governed by state contract law." *Smith v. ABN AMRO Mortg. Group, Inc.*, 434 Fed. Appx. 454, 460 (6th Cir. 2011) (citations omitted). Here, the parties agree that Ohio law applies. Under Ohio law, "[t]he result of a valid settlement agreement is a contract between parties, requiring a meeting of the minds as well as an offer and an acceptance thereof." *Rulli v. Fan Co.*, 79 Ohio St. 3d 374, 683 N.E.2d 337, 339 (1997) (citations omitted). Before a court may enforce a settlement agreement, it must conclude that the parties have reached an agreement on all of the material terms. *RE/MAX Internat'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 645-56 (6th Cir. 2001). If the facts material to an agreement are in dispute, the court must

ordinarily hold an evidentiary hearing. *Id.* No hearing is necessary, however, "where an agreement is clear and unambiguous and no issue of fact is present." *Id.* Thus, summary enforcement is appropriate "where no substantial dispute exists regarding the entry into and terms of an agreement." *Id.*

The Court finds that no evidentiary hearing is necessary in this case because a clear and unambiguous agreement existed as of August 31, 2017, and there is no dispute of fact as to the essential terms of that agreement. Moreover, this Court participated in both the August 10 and September 28 negotiations and has first-hand knowledge of the agreement that the parties reached.

At the August 10 settlement conference, the parties reached a meeting of the minds on all of the essential terms of the agreement. Specifically, as relevant to the instant motion, the parties agreed that Plaintiff would not seek re-employment by *Defendant*–that is, JPMorgan Chase Bank, N.A. They also agreed that Plaintiff's employment would be protected if his employer merged with Defendant "or its related entities." (Def.'s Resp. at 3). Despite specifically addressing Defendant's "related entities" while negotiating this term, the parties did *not* agree that Plaintiff would not seek employment with any of Defendant's subsidiaries or related entities. Nor does Defendant argue that the parties so agreed. Following the August 10 settlement conference, Defendant's counsel wrote to Plaintiff and the Court on August 31, stating that "Defendant has accepted the settlement we tentatively reached on August 10, 2017." At this point, the parties had a binding contract.

Defendant wholly fails to acknowledge the August 31 email, arguing instead that it "cannot be bound when it has not given its assent to the written document." (Def.'s Resp. at 1).

4

But the fact that the parties had not memorialized the agreement in writing does not diminish the existence of a valid contract. *RE/MAX*, 271 F.3d at 646. "When parties have agreed on the essential terms of a settlement, and all that remains is to memorialize the agreement in writing, the parties are bound by the terms of the oral agreement." *Id.*

This case is strikingly similar to *Bosley v. 21 WFMJ Television, Inc.*, 245 Fed. Appx. 445 (6th Cir. 2007). Counsel for the parties in *Bosley* reached agreement on the essential terms of a settlement agreement. The defendants then filed a notice with the district court that the parties had effectively settled their dispute. Later, in attempting to finalize the agreement, a dispute arose as to its terms. The plaintiff filed a motion to enforce the agreement, arguing that defendants were attempting to modify the terms of the settlement by adding additional terms to which the parties had not agreed. In opposing the plaintiff's motion to enforce the agreement, the defendants argued that the conversations between counsel were simply preliminary negotiations and that the product of the negotiations was an incomplete contract. In rejecting the defendants' argument that no agreement had been reached, the Sixth Circuit stated:

> Defendants do not identify...what elements were missing from the agreement at the time they notified the district court that ...the case had been settled. Defendants seem to assume that because they would have preferred that the agreement contain terms different from those agreed upon by [counsel for the parties], the agreement must necessarily be incomplete, and as a consequence, there was no meeting of the minds.... [Defendants'] notice did not state that the parties were *close* to settlement or that talks were *on the verge* of producing an agreement. Rather, the defendants themselves stated that agreement had effectively been reached and that the process of drafting documents had begun. Moreover, the notice contained no hint that settlement was contingent on the negotiation of additional terms or, as defendant's counsel asserted at oral argument, the actual memorialization of the agreement terms in a written document.... A settlement agreement, like any other contractual arrangement, depends upon objective, not subjective, manifestation of intent...By all appearances, the parties operated as if their dispute had been resolved.

5

*Id.* at 451 (emphasis in original). Similarly, in this case, the parties' objective manifestation of intent demonstrates that, as of August 31, their dispute was resolved. Defendants' email informing the Court of the resolution does not state that any outstanding issues still had to be resolved or that Defendant's acceptance was conditioned on additional terms that were not discussed at the August 10 conference. Rather, it unequivocally states that Defendant had accepted the agreement reached on August 10.[4] Defendant cannot avoid a contract that it agreed to by inserting a new material term that would prohibit Plaintiff from seeking employment from Defendant's subsidiaries–hundreds of companies that are separate legal entities from Defendant.[5] For these reasons, Plaintiff's motion to enforce is granted.

Plaintiff also moves for attorney's fees. As part of its inherent powers, a district court

---

[4] Indeed, Defendants' email more clearly demonstrates that an agreement had been reached than in *Bosley*. There, the defendants' notice to the court stated that the parties had "*effectively* reached a settlement," which the court acknowledged communicated some degree of equivocation but was insufficient to show that the settlement was "somehow contingent on the negotiation of additional material terms." 245 Fed. Appx. at 451 (emphasis in original).

[5] Counsels' discussion during the September 28 conference call with the Court confirm that the parties' agreement did not include a promise by Plaintiff not to seek employment with any of Defendant's subsidiaries. During that call, Defendant's counsel agreed to remove the term "subsidiaries" from the draft of the re-hire clause. Defendant's counsel does not dispute this. Nor does she dispute that parties were to be available during this call or that she never informed the Court that she did not have the authority to bind her client. Instead, she argues, "It goes without saying that all that was discussed was required to be taken back to the respective clients for review and approval." (Def.'s Resp. at 4). Because the parties had already reached a meeting of the minds as of August 31, the Court need not address Defendant's argument that it is not bound by its counsel's representations on this call. Nevertheless, the Court would be remiss if it did not note its displeasure with counsel's behavior. Her failure to inform the Court and Plaintiff's counsel that she was reserving the right to renege on what both the Court and Plaintiff believed to be a clear agreement–indeed, following the call, the Court noted on the docket that it anticipated a dismissal entry–is appalling.

6

may award attorney fees in its discretion without statutory authorization for bad faith or oppressive litigation practices. *Jaynes v. Austin*, 20 Fed. Appx. 421, 427 (6 th Cir. 2001) (citing *Alyeska Pipeline Serv. Co. v. Wildemess Soc'y,* 421 U.S. 240, 275, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *F.D. Rich Co. v. United States for Use of Indus. Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974)). An award of attorney fees under a court's "inherent powers" requires "a finding that an attorney willfully-abuse[d] judicial processes by conduct tantamount to bad faith." *Id.* (quotations omitted).

Here, the Court finds that Plaintiff is entitled to the attorney fees incurred in filing his motion to enforce. Defendant unequivocally informed the Court that this case was settled on August 31. It thereafter attempted to include new terms into the agreement that were neither agreed to, nor bargained for. Counsel's conduct–reaffirming in the September 28 conference call that "subsidiaries" would be removed from the re-hire clause and then attempting to renege on that agreement by claiming that she did not have the authority to bind her client–is also egregious. Taken together, this conduct is tantamount to bad faith. "Plaintiff should not be required to bear the burden of paying attorney fees for Defendant's failure to comply with the settlement agreement." *Hoey v. Sunrise Senior Living Mgt., Inc.*, 2013 WL 773014 (E.D. Mich. Feb. 28, 2013).

**CONCLUSION**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Enforce Settlement; GRANTS Plaintiff's Motion for Fees; and DENIES Plaintiff's Motion for Hearing (Doc. 20, 21). Any outstanding payments must be made current within thirty days of this Order. Finally, Plaintiff must submit counsel's affidavit regarding the fees that were incurred in the filing of

Plaintiff's motion to enforce within fourteen days of this Order.

    IT IS SO ORDERED.

                                          /s/ Patricia A. Gaughan
                                          PATRICIA A. GAUGHAN
                                          United States District Court
                                          Chief Judge

Dated: 11/21/17